1

2

3

4

5

6

7

8              IN THE UNITED STATES DISTRICT COURT FOR THE

9                    EASTERN DISTRICT OF CALIFORNIA

10

11    DAVID LEE WEAVER,                    )     1:10-cv-01523-AWI-BAM
                                           )
12                Plaintiff,               )     ORDER RE: MOTION FOR
                                           )     SUMMARY JUDGMENT OR
13         v.                              )     SUMMARY ADJUDICATION
                                           )
14    UNITED STATES DEPARTMENT OF          )     (Doc. 33)
      AGRICULTURE, FOREST SERVICE;         )
15    MICHAEL JAMES RYAN; and              )
      DOES 1 through 100,                  )
16                                         )
                  Defendants.              )
17    _____)

18

19                          I. INTRODUCTION

20

21    Defendant United States of America (hereinafter referred to as "Defendant" or "the government")

22    has filed a motion for summary judgment or summary adjudication in the alternative pursuant to

23    Federal Rule of Civil Procedure 56.  For reasons discussed below, the motion shall be denied.

24

25                   II. FACTS AND PROCEDURAL BACKGROUND

26

27    On August 1, 2011, plaintiff David Lee Weaver (hereinafter referred to as "Plaintiff" or "Weaver")

28    filed his first amended complaint (FAC) against defendants the government (sued as United States

Department of Agriculture, Forest Service), Michael James Ryan and Does 1 through 100, asserting

one of cause of action in negligence against all defendants.  In the FAC, Plaintiff alleged as follows:

> "[O]n or about May 4, 2009 [ ] Defendant, Michael James Ryan, was the operator of a certain 2006 Ford Expedition bearing California license No. A318284. [¶] Defendant, United States Department of Agriculture, Forest Service was the owner of the 2006 Ford Expedition and employed Defendant Michael James Ryan who was within scope and course of said employment when the within acts alleged in Plaintiff's complaint occurred."

Plaintiff further alleged:

> "[O]n or about May 4, 2009 Plaintiff was traveling on Highway 99 in Kern County, California, South of Whistler Rd. in a northerly direction, operating his 1993 BMW license No. 4ZGF161.  At that time and place, Defendants, and each of them, so negligently and carelessly entrusted, owned, managed, employed[,] maintained, drove and operated their motor vehicle so as to legally cause said motor vehicle to collide with the motor vehicle which contained Plaintiff by making an unsafe lane change and as a result thereof, caused [ ] injuries and damages . . . ."

Plaintiff further alleged:

> "On September 26, 2009 a timely governmental claim for damages pursuant to Title 28 U.S.C. Section 2401(b) was presented to the United States Department of Agriculture Forest Service for the injuries and damages suffered by Plaintiff, which was rejected by them on February 22, 2010 and March 22, 2011 and served upon Plaintiff on March 16, 2010 and March 25, 2011 thus making the within action timely against the Defendants in compliance with Title 28 U.S.C. Section 2675."

On November 9, 2012, the government filed its motion for summary judgment or summary

adjudication in the alternative pursuant to Federal Rule of Civil Procedure 56, contending there are

no genuine issues of material fact and the government is entitled to judgment as a matter of law.

Plaintiff did not file a written opposition to the government's motion.

### III. LEGAL STANDARD

"A party may move for summary judgment, identifying each claim or defense – or the part of each

claim or defense – on which summary judgment is sought.  The court shall grant summary judgment

if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled

to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the initial burden

of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see* Fed. R. Civ. P. 56(c)(1)(A). "Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." *In re Oracle Corp. Securities Litigation,* 627 F.3d 376, 387 (2010) (citing *Celotex, supra,* at p. 325). If the moving party meets its initial burden, the burden shifts to the non-moving party to present evidence establishing the existence of a genuine dispute as to any material fact. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 585-86, 106 S.Ct. 1348, 89 L.Ed.2d 538. A court ruling on a motion for summary judgment must construe all facts and inferences in the light most favorable to the non-moving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Even if the motion is unopposed, the movant is not absolved of the burden to show there are no genuine issues of material fact, *Henry v. Gill Industries, Inc.,* 983 F.2d 943, 949-50 (9th Cir. 1993), although the court may assume the movant's assertions of fact to be undisputed for the purposes of the motion and grant summary judgment if the facts and other supporting materials show the movant is entitled to it. *See* Fed. R. Civ. P. 56(e)(2), (3).

## IV. DISCUSSION

***A. The government's first argument (Plaintiff cannot meet his burden of proof on negligence)*** – As against the defendants, Plaintiff has asserted what is essentially a claim for motor vehicle liability sounding in negligence. "The elements of a cause of action for negligence are ' " '(a) a legal duty to use due care; (b) a breach of such legal duty; [and] (c) the breach [was] the proximate or legal cause of the resulting injury.' " [Citation.] [Citation.]" *Walker v. Sonora Regional Medical Center,* 202 Cal.App.4th 948, 958, 135 Cal.Rptr.3d 876 (2012). The government now contends summary

judgment must be granted in its favor because Plaintiff cannot adduce evidence to establish one or

more of the elements of actionable negligence.  Pursuant to this general argument, the government

first contends Plaintiff's claim the driver of the government vehicle, defendant Michael James Ryan,

operated his vehicle in a negligent manner is purely speculative and conjectural.  The government

directs the Court to Ryan's declaration, submitted with its motion, wherein Ryan testified as follows:

> "On May 4, 2009, I was traveling northbound on Highway 99 near Shafter in a white
> 2006 Ford Expedition . . . . At all relevant times, the weather was dry and clear and
> events occurred during daylight hours.  The speed limit was 70 miles per hour. [¶]
> At approximately 5:45 p.m[.] on May 4, 2009, I observed an accident with a person
> lying on the ground on the right hand shoulder of Highway 99.  I slowed from the
> speed limit of 70 mile[s] per hour to approximately 40 miles per hour.  I decided to
> lend assistance because no emergency vehicles were present."

Ryan further testified:

> "I signaled a lane change from the left lane (number 1) and checked my rear view and
> side mirrors and looked over my shoulders, before merging into the middle lane
> (number 2).  After merging into the middle lane (number 2), I again checked my rear
> view and side mirrors and looked over my shoulder and, with the signal still on,
> determined that the path was clear and merged from the middle lane (number 2) to
> the right lane (number 3).  Immediately after completing the lane change into the
> right lane (number 3), I was struck from behind by a black BMW.  The lane was clear
> when I made the lane change, but the black BMW was driving fast and it closed the
> distance between us very rapidly."

The government further points to portions of the deposition testimony of Monte Blain Peckinpah,

a third party who witnessed the accident between Plaintiff and Ryan.  Peckinpah testified as follows:

> "I was traveling northbound on 99.  I was in, I believe, the fast lane.  I can't recall
> that . . . . And there was an accident to my right. [¶] I'm not sure what happened, but
> two cars collided or moved off the road and created a cloud of dust.  And that
> accident subsequently caused all the traffic northbound to slow to – not to a halt, but
> tremendously slowed down because everyone was postured in different spots on the
> freeway, three lanes, and it all slowed down from basically 70 to 30 miles an hour."

Peckinpah further testified:

> "[O]nce this happened, I noticed in my rear view mirror an Expedition coming up on
> me, and I moved over to the left lane, I believe.  I was in the middle lane, and I
> moved over, and he slowed down, and I turned around and looked.  He was almost
> parallel with me. [¶] And we were going maybe 20 miles an hour at that point
> observing the wreck, you know, like most people do."

Peckinpah further testified:

> "Then once the dust, comes the black car, Mr. Weaver, and in the rear view mirror

I noticed he didn't notice the wreck or whatnot, but he did not reduce speed. He was maintaining a high rate of speed. It might have been the speed limit of 70 at the time. [¶] . . . [¶] And I looked over, and as the Forest Service guy moved over, either this fellow – the black car – wasn't looking, because he had time to slow down, and then all of a sudden, I think he looked up and then plowed into the rear right quarter panel of the car it looked like. [¶] . . . [¶] And he didn't let off the fuel looked like. He had not noticed either the wreck or the vehicle in front of him[.]"

The government also points to the traffic collision report prepared by California Highway Patrol officer Kevin Ray Perkins, who concluded, based on his investigation of the accident, that Plaintiff caused the accident by driving at a speed unsafe for traffic conditions. Based on this evidence, the government now contends summary judgment must be granted in its favor because the undisputed evidence shows Ryan did not act negligently but rather with due care. Having reviewed the pleadings of record and all competent and admissible evidence submitted, the Court does not agree. First, the traffic collision report is merely one piece of evidence to be considered by the reasonable trier of fact; it is not, in itself, dispositive of Ryan's negligence (or lack thereof). Second, the Court notes Plaintiff was asked to describe his recollection of the accident at his deposition. He testified:

"[Ryan] ran into me. He side swiped me. Side swiped me as he came out of his lane on to my vehicle. [¶] . . . [¶] . . . There is nothing in front of me. He came from out of the lane and hit me[.] [¶] . . . [¶] . . . This man came in front of me. If I'd have seen that man, I would have tried to avoid him. I wouldn't have hit him."

Plaintiff further testified:

"I remember seeing taillights on my windshield. He wasn't at the front of my vehicle. He wasn't at the tip of the hood. His vehicle was on top of my vehicle. He side swiped me. [¶] . . . [¶] The man hit me, knocked me out of the lane, knocked me to the side . . . . I didn't run into him. [¶] . . . [¶] There is nobody in front of me to avoid. Who am I going to avoid? The man hit me. He side swiped me. [¶] . . . [¶] . . . If I'd have seen him beside me, I might have slowed down or sped up. I didn't see the man. The man hit me. [¶] . . . [¶] . . . Your man ran into me, side swiped me, knocked my vehicle off the freeway."

Plaintiff's testimony, which controverts the testimony of Ryan and Peckinpah, would be sufficient for a reasonable trier of fact to conclude Ryan caused the accident by sideswiping Plaintiff. The Court notes both Ryan and Peckinpah testified (and Perkins's traffic report stated) that as a result of the collision Ryan's Expedition suffered damage to its *right rear quarter panel*. This evidence suggests the collision might not have begun as a direct rear-end impact, as the government implies,

5

but possibly as a partial side-to-side impact, lending further credence to Plaintiff's sideswipe theory.

Even if the collision did begin as a direct rear-end impact of Ryan's vehicle by Plaintiff's vehicle, evidence in the record suggests Ryan's actions may have caused the accident by leaving Plaintiff insufficient time to react to avoid a collision.  Plaintiff's testimony suggests he did not reduce speed significantly below the posted speed limit, as the government suggests he should have, because Plaintiff did not perceive any vehicles directly ahead of him in his lane.  The government reemphasizes its contention Plaintiff was driving too fast for traffic conditions, but the various testimonies of Plaintiff, Ryan and Peckinpah all appear to be consistent on at least one point: that there was *no immediate obstruction in Plaintiff's lane* (i.e., the far right lane) *until* Ryan's Expedition moved from the center lane over into Plaintiff's lane.  While Peckinpah did testify the speed of traffic in the vicinity had slowed considerably due to another accident, both his and Ryan's testimony suggests the vehicles involved in *that* accident had already moved off to the shoulder.  Peckinpah also testified that as soon as Ryan moved into Plaintiff's lane, Plaintiff swerved to the right (i.e., toward the shoulder), and while Peckinpah testified he had "really no specific idea why" Plaintiff swerved, Peckinpah believed it might have been because Plaintiff did not want to hit Ryan.  Again, Plaintiff testified he did not see any vehicles in his lane immediately in front of him, and further testified he could not have done anything differently to prevent hitting Ryan once Ryan made his lane change.  Based on this evidence, a reasonable trier of fact could infer, there not being any immediate obstruction in Plaintiff's lane, that Plaintiff was justified in traveling at a relatively higher rate of speed and that it was Ryan's movement from the center lane to the far right lane – as opposed to Plaintiff's speed of travel – that caused the collision between Plaintiff's and Ryan's vehicles.

Equally important, Plaintiff further testified as follows: "[After the collision] I got out the car, and Mike Ryan was running over there.  He thought he killed me . . . . He thought he done damage to me, maybe I was in critical condition. [¶] He said I'm so sorry, sir, it was my fault, I didn't see you.  He told the witness that.  He told both the witnesses that.  He told me that.  [¶] . . . [¶] He said I'm so sorry.  He thought he killed me.  He thought I was dead."  At the very least,

Ryan's statements as conveyed through Plaintiff's testimony would be admissible as a direct admission of a party opponent under Federal Rule of Evidence 801(d)(2), *see Stegall v. Citadel Broadcasting Co.,* 350 F.3d 1061, 1070 fn. 8 (9th Cir. 2003), and possibly even as a present sense impression or excited utterance under Federal Rule of Evidence 803(1) and (2).  While the weight and credibility of Plaintiff's testimony is ultimately a decision for the trier of fact, these statements, if credited, would be sufficient for the trier of fact to conclude Ryan *did* act negligently. Accordingly, the government's contention the claim that Ryan operated his vehicle negligently is purely speculative and conjectural is not ground for summary judgment in favor of the government.

Citing *Beck v. Kessler,* 235 Cal.App.2d 331, 45 Cal.Rptr. 237 (1965), the government further contends (1) "[a] motorist who does not see that which is clearly visible and would have been seen by one exercising ordinary care, as the result of which a collision occurs, is guilty of negligence as a matter of law" and that (2) "[t]here is a permissible inference of negligence from the fact of a rear-end collision, requiring some explanation or excuse from the driver of the rear car."  The government points to Plaintiff's own testimony he did not slow his vehicle below the speed limit and did not see Ryan's vehicle immediately before the collision, and further points to Peckinpah's and Perkins's testimony Plaintiff was inattentive and driving too fast for the conditions.  From this, the government contends summary judgment must be granted in its favor because the evidence shows Plaintiff, the driver of the rear car, did not fully exercise due care.  The government could hardly be more wrong.

As the Court discussed in detail above, there is sufficient evidence in the record for a reasonable trier of fact to conclude Ryan drove negligently.   In light of this evidence, the government's most current contention here (i.e., summary judgment must be granted because the evidence suggests *Plaintiff* acted negligently) essentially presupposes any negligence that may have been committed by Plaintiff necessarily negates any negligence that may have been committed by Ryan.  The government has provided no authority – and the Court's research reveals no authority – to support this proposition.  This is not surprising, given the government's position is contrary to the law: since 1975, California has applied a system of comparative negligence "under which liability

for damage will be borne by those whose negligence caused it in direct proposition to their respective fault." *Li v. Yellow Cab Co.,* 13 Cal.3d 804, 813, 119 Cal.Rptr. 858, 532 P.2d 1226 (1975). "Under comparative fault principles, a plaintiff's negligence no longer bars recovery, but reduces 'the damages awarded . . . in proportion to the amount of negligence attributable to the [plaintiff].' " *Diaz v. Carcamo,* 51 Cal.4th 1148, 1156, 126 Cal.Rptr.3d 443, 253 P.3d 535 (2011) (quoting *Li, supra,* 13 Cal.3d at 829). That is to say, the fact a plaintiff contributed to his or her injuries is no longer a complete defense to a negligence action; it simply reduces the amount of the defendant's liability.

     *Beck,* the case cited in the motion, is of no assistance to the government. The plaintiffs in *Beck* were passengers in a taxicab traveling southbound from San Francisco to Daly City. *Beck, supra,* 235 Cal.App.2d at 333. The cab, positioned in the center of three southbound traffic lanes, had been stopped for several seconds at a red light at the intersection of Junipero Serra Boulevard and 19th Avenue when it was rear-ended by a vehicle driven by the defendant. *Id.* At trial the defendant testified he saw the traffic lights at the intersection; was looking through his windshield; that there was nothing obstructing his view of the cab; and that he simply kept driving at the same speed until he was a short distance from the cab, when he suddenly applied the brakes. *Id.* at 333-34. It was further undisputed the weather was clear, the streets dry and the intersection well-lighted. At the close of evidence the trial court granted the plaintiffs' motion for a directed verdict in their favor and against the defendant on liability, and the Court of Appeal affirmed. *Id.* at 334, 341. The court reasoned: "In the instant case, the evidence on the issue of negligence is not in conflict. The plain facts are that on a clear, dry night and on a well-lighted highway, presenting no involvement of other moving traffic, defendant collided with the taxicab which was lawfully stopped at the intersection and failed to stop his own car in time to avoid the collision. There is no evidence nor any claim that the cab caused the accident either by suddenly coming to a stop or by suddenly being driven into the path of defendant's car. [Citation.] The cab was in plain sight of defendant and he admitted there was nothing to obstruct his view. Indeed the record is entirely barren of any evidence constituting any excuse or justification for defendant's conduct or affording any sound reason for defendant's failure

8

to see the cab until he was virtually upon it.  It is inconceivable that a person who is driving at the regular speed, who is looking ahead and can see the light regulating traffic at an intersection less than a block away cannot see a vehicle properly stopped at the intersection when his visibility is not impaired by any object, condition of the weather or poor lighting . . . . In our view reasonable men can draw only one conclusion from the evidence, namely that defendant was negligent." *Id*. at 338.

By contrast, there are substantial conflicts in the evidence presented here, all of which can only be resolved by a reasonable trier of fact.  In his declaration, Ryan testified his vehicle was (1) highly visible and in plain sight prior to and at the time of the collision and (2) completely in the far right lane at the time of impact, as if to suggest the facts in this case are apposite to those in *Beck*. But unlike the circumstances in *Beck,* where the defendant had begun approaching the plaintiffs' cab from the rear for several seconds and at least half a block before the collision occurred and further admitted he had had an unobstructed view of the cab during the entirety of the approach, *Beck, supra,* 235 Cal.App.2d at 333-34, Plaintiff testified he did not see Ryan's vehicle until Ryan came out of the middle lane and sideswiped him.  There is also conflicting evidence as to the manner in which Ryan allegedly changed lanes.  Ryan, as noted above, testified in his declaration that he signaled a lane change, checked his mirrors and blind spots, determined the path was clear and merged from the middle lane to the right lane.  Problematically for the government, Plaintiff testified Ryan did not signal and did not even begin his lane change until his vehicle was practically "on top" of Plaintiff's vehicle, resulting in an impact.  From this a reasonable trier of fact could conclude Ryan changed lanes and moved into the path of Plaintiff's vehicle without having determined whether he could do so safely.  Accordingly, the government is not entitled to summary judgment in its favor based on the contention Plaintiff cannot meet his burden of proof on negligence.

***B. The government's second argument (Plaintiff cannot meet his burden of proof on damages)*** – The government further contends summary judgment must be granted because Plaintiff cannot meet his burden of proof on damages.  Under this general line of argument, the government first

1   contends Plaintiff cannot establish his claim for compensatory damages because he did not provide

2   a computation of damages as required by Federal Rule of Civil Procedure 26.   Under Rule 26, "a

3   party must, without awaiting a discovery request, provide to the other parties: [¶] . . . [¶] (iii) a

4   computation of each category of damages claimed by the disclosing party – who must also make

5   available for inspection and copying as under Rule 34 the documents or other evidentiary material,

6   unless privileged or protected from disclosure, on which each computation is based, including

7   materials bearing on the nature and extent of injuries suffered[.]" Fed. R. Civ. P. 26(a)(1)(A)(iii).

8   "Disclosing a computation of damages under Rule 26(a)(1) is necessary for the opposing party to

9   produce responding evidence, such as an expert opinion." *In re Gorilla Companies, LLC,* 454 B.R.

10  115, 120-21 (D.Ariz. 2011).  The government contends, and Plaintiff does not dispute, a computation

11  of damages was never disclosed.  The government, however, has not explained how this would be

12  sufficient for the Court to grant summary judgment in its favor.  "[T]he plain language of Rule 56(c)

13  mandates the entry of summary judgment, after adequate time for discovery and upon motion,

14  against a party who fails to make a showing sufficient to establish the existence of an element

15  essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*

16  *Corp., supra,* 477 U.S. at 322.  The government has provided no authority – and the Court's research

17  reveals no authority – to support the proposition that a computation of damages, as opposed to mere

18  *evidence of injury*, is an element essential to a negligence cause of action.  At most, Plaintiff's failure

19  to provide a computation of damages at the initial disclosure stage would entitle the government to

20  file a motion in limine precluding Plaintiff from using a computation of damages to prove injuries

21  at trial.  *See Villagomes v. Laboratory Corp. of America,* 783 F.Supp.2d 1121, 1129 (D.Nev. 2011).

22      The government further contends Plaintiff "cannot prove either the reasonable cost or

23  reasonable necessity of medical services, because he did not designate any opinion witness to testify

24  on those issues and did not produce any report setting forth the opinions and their factual basis."

25  Even assuming, without deciding, that this might arguably be the case, the government fails to

26  explain, as with its argument re: computation of damages above, how Plaintiff's failure to designate

27

28                                                              10

1   a medical expert would be sufficient for the Court to grant summary judgment in its favor.  Plaintiff

2   is not precluded from showing all damages simply because he failed to designate a medical expert,

3   as the government appears to imply.  For example, Plaintiff could conceivably claim future economic

4   and non-economic damages as a result of the accident.  To recover such damages, Plaintiff would

5   simply have to show he was reasonably certain to suffer such damages in the future.  *See* Cal. Civ.

6   Code, § 3283 ("Damages may be awarded, in a judicial proceeding, for detriment resulting after the

7   commencement thereof, or certain to result in the future").  "While there is no clearly established

8   definition of 'reasonable certainty,' evidence of future detriment has been held sufficient based on

9   expert medical opinion which considered the plaintiff's particular circumstances and the expert's

10  experience with similar cases." *Bihun v. AT&T Information Systems, Inc.,* 13 Cal.App.4th 976, 995,

11  16 Cal.Rptr.2d 787 (1993) (disapproved of on other ground in *Lakin v. Watkins Associated*

12  *Industries,* 6 Cal.4th 644, 657, 25 Cal.Rptr.2d 109, 863 P.2d 179 (1993)).  However, expert medical

13  testimony is not required.  "All that is required to establish future disability is that from all the

14  evidence, including the expert testimony, *if there be any*, it satisfactorily appears that such disability

15  will occur with reasonable certainty." *Mendoza v. Rudolf,* 140 Cal.App.2d 633, 637, 295 P.2d 445

16  (1956) (emphasis added) (holding it unnecessary for an award of damages for pain and suffering to

17  be supported by medical testimony).  Consequently, a plaintiff's own testimony that at the time of

18  trial he or she was still "suffering from headaches, nervousness and pain" resulting from an

19  automobile accident would be evidence tending to prove – and sufficient to justify a jury instruction

20  on – future non-economic damages. *Loper v. Morrison,* 23 Cal.2d 600, 611, 145 P.2d 1 (1944).  At

21  his deposition, Plaintiff was asked to described his injuries, to which he responded: "Pain, suffering,

22  just pain, and it hasn't left.  It's worse than what it was."  Plaintiff was further asked, "Where did

23  the pain start?" to which he replied, "In my body after the accident. [¶] . . . [¶] My neck, my head,

24  shoulder.  It's still there.  It hasn't left."  Such evidence would be sufficient to support, at the very

25  least, an award of future damages.  Accordingly, the government's contention Plaintiff has failed to

26  designate a medical expert is not ground for summary judgment in favor of the government.

27

28                                                11

***C. The government's third and final argument (Plaintiff failed to make mandatory initial disclosures, precluding him from presenting evidence at motion and at trial)*** – As its third and final argument, the government contends summary judgment must be granted because Plaintiff failed to provide mandatory initial disclosures of the names of witnesses and documents he intends to use to support his claims pursuant to Rule 26, and is therefore precluded from presenting any evidence at trial.  Ordinarily, the Court might be inclined to agree with the government.  However, the government overlooks one important point, which is this: "[A] party is not required to list itself (assuming it is an individual and not an entity) as a witness," and "[f]ailure to do so would not preclude the party from testifying." *Igbinovia v. Catholic Healthcare West,* 2010 WL 5070881 (D.Nev. 2010) at *5 (unpublished).  As should be evident from the Court's discussion, nearly all of the evidence creating genuine issues of material fact in this case comes from Plaintiff's testimony.  Because Plaintiff would always be permitted to testify on his own behalf, his failure to disclose other witnesses or documents is not ground for summary judgment in favor of the government.

## V. DISPOSITION

Based on the foregoing, the government's motion for summary judgment or summary adjudication in the alternative is DENIED.

IT IS SO ORDERED.

Dated:   January 11, 2013

_____
UNITED STATES DISTRICT JUDGE