1

2

3

4

5

6

7

8              **UNITED STATES DISTRICT COURT**

9              **EASTERN DISTRICT OF CALIFORNIA**

10

11   David Lee Weaver,              )   CV 10-1523 RSWL
                                    )
12              Plaintiff,          )
                                    )
13        v.                        )   **RULING AND ORDER**
                                    )   **RE COURT TRIAL**
14   United States Department of    )
     Agriculture, Forest           )
15   Service, Michael James Ryan    )
     et al.,                        )
16                                  )
                Defendants.          )
17   _____)

18        On August 23, 2010, Plaintiff David Lee Weaver

19   ("Plaintiff") filed a Complaint against Defendants

20   United States Department of Agriculture ("USDA");

21   Forest Service; and Michael James Ryan ("Ryan")[1] in this

22   Court, alleging a claim for negligence [1], and was

23   allowed to proceed *in forma pauperis* [3].  Plaintiff

24   filed an amended complaint on April 1, 2011 [8].

25        On March 19, 2013, the Court commenced a court

26   _____

27        [1] The United States of America (the "United States" or
     "Defendant") was substituted as the only defendant consistent
28   with the provisions of the Federal Tort Claims Act, 28 U.S.C. §
     1346(b)(1) [20].

trial and heard arguments from the Parties.  Having
received, reviewed, and considered the evidence
presented, as well as the Parties' arguments at trial,
the Court makes the following ruling:

## I. FINDINGS OF FACT

### A.   The Accident

1.   On May 4, 2009, at approximately 4 or 5 o'clock
in the afternoon, Plaintiff, driving a black BMW 318is,
and Ryan, driving a Ford Expedition owned by the USDA
and Forest Service, collided on Highway 99 in Kern
County, California.

2.   The accident site, Highway 99, is a three-lane
highway.  The speed limit was 70 miles per hour.

3.   Plaintiff is an individual residing in Tipton,
California.  At the time of the collision, Ryan was an
employee of the USDA and Forest Service, serving in the
capacity of district fire management officer.  At all
relevant times, Ryan acted within the scope of his
employment with the USDA and Forest Service.  Ryan
drove the Ford Expedition at issue in the course of his
employment.

4.   Just before the accident, Plaintiff was driving
north on California Highway 99.  Plaintiff occupied the
far right lane ("the number three lane"), which is the
slow lane.  His vehicle was traveling at approximately
70 miles per hour.  As he testified at trial, Plaintiff
had an unobstructed view of the highway.

5.   At the time, Ryan was also driving northbound

on Highway 99.  Ryan's vehicle was traveling at
approximately 65 to 70 miles per hour in the far left
lane ("the number one lane").

6.   Ryan then observed an accident on the shoulder
of Highway 99, and saw a body lying alongside a parked
vehicle.  Ryan determined that he would render
assistance.  As testified by defense witness Monte
Peckinpah ("Peckinpah"), traffic was beginning to slow
down due to the accident.

7.   Ryan proceeded to change lanes.  He deployed
his vehicle turn signal, looked over his shoulder and
checked his mirrors, and moved into the middle lane
("the number two lane").  He repeated these steps to
move into the number three lane.  He reduced the speed
of his vehicle each time he changed lanes.  Ryan
believed that he could safely change lanes as the
number two and three lanes were "clear" prior to his
changing lanes.  Ryan's Ford Expedition was equipped
with red emergency lights and was striped, but the
emergency lights were not deployed.

8.   Immediately upon Ryan's movement into the
number three lane, Plaintiff and Ryan's vehicles
collided, with Plaintiff striking the rear of Ryan's
Ford Expedition.

9.   Plaintiff had not seen Ryan's vehicle prior to
the collision.  Plaintiff did not see any vehicles
immediately ahead of his vehicle or immediately to his
left.  The only time that Plaintiff saw Ryan's vehicle

was when the vehicles had already collided and when Ryan's vehicle was directly "on top" of his hood.

10.   Ryan did not see Plaintiff's vehicle prior to moving into the number three lane.

11.   As indicated, the accident occurred in the early evening, late afternoon, some time around four or five o'clock when there was still daylight.   The weather conditions were clear and sunny, and the road was dry.

12.   A California Highway Patrol ("CHP") Officer responded to the accident.   Plaintiff's vehicle was towed from the accident scene.

13.   As testified by Plaintiff at trial, after the accident, Plaintiff emerged from his vehicle without any cuts or bleeding.   However, he experienced some neck discomfort and disorientation.   An ambulance arrived and Plaintiff was taken to a hospital.

14.   Plaintiff's vehicle sustained substantial front-end damage, and the vehicle's windshield was cracked.[2]

_____

[2] At trial, Plaintiff did not present any photographs or other depictions of the damage sustained by his vehicle.   The Court notes that Plaintiff generally failed to provide any evidence other than his own testimony.   In making its findings of fact, the Court can consider only what was presented to it at trial.   The Court notes that documents presented in prior proceedings, but not admitted at trial, are not considered.

During trial, the Court provided Plaintiff numerous opportunities to provide photographs, if he had any, of the accident scene and the damaged vehicles.   The Court notes that Plaintiff lodged exhibits containing photocopies of what appeared to be photographs of his car, but they were indecipherable and,

15.   Ryan's vehicle also sustained damage.   The rear bumper of his vehicle was smashed in the lower right quarter panel.   The tail pipe was pushed against the right rear wheel.

16.   Plaintiff purchased his car for $100, approximately two weeks before his accident, on April 29, 2009.

**B.   <u>Plaintiff's Medical Treatment and History</u>**

17.   Although Plaintiff was taken to a hospital after the accident, Plaintiff did not present any record of any treatment that he received at the hospital or any invoices he might have received from the hospital or ambulance.   After the accident, Plaintiff did not obtain any further medical treatment.

18.   Plaintiff had a history of neck pain.   As

---

as a result, ultimately were not admitted at trial.   In sum, Plaintiff only provided two photographs, which allegedly depict the skid marks on Highway 99 that were made by the two vehicles involved here.   <u>See</u> Exs. 23, 24.

Prior to resting his case, the Court also provided Plaintiff with a recess so that he can review his exhibits and determine whether he had the exhibits he needed.   Nonetheless, Plaintiff provided only exhibits 23 and 24.

During trial, Plaintiff complained repeatedly that he was unable to offer as evidence a punctured tire and hubcap from his car.   The Court had advised Plaintiff that he could take photographs or testify about the appearance of the tire and hubcap.   Plaintiff did not provide such evidence.

Further, Plaintiff alleged that he previously filed photographs with the Court, and argued that these photographs would prove Defendant's liability.   These photographs were never presented at trial.   Nevertheless, the Court already finds liability.

testified at trial, prior to the accident, Plaintiff
had been treated for his neck pain for about a year.
On the morning of the accident, he had taken an MRI of
his neck at the Tulare District Hospital.

19.   On or about July 11, 2012, Plaintiff underwent
an independent medical examination by Dr. Harvey L.
Edmonds, M.D., the United States' medical expert and a
board certified neurologist.  At the evaluation,
Plaintiff complained of headaches, pain in his neck
that radiated along the inner surface of his left
forearm, numbness and tingling in his hands, weakness
in his left arm, and tremor in his left hand.
Plaintiff also told Dr. Edmonds that he frequently
dropped things that he held in his left hand.
Plaintiff also complained that he had difficulty
writing.

20.   Dr. Edmonds underwent a neurological
examination of Plaintiff, which included evaluating
Plaintiff's mental status, examining his cranial
nerves, and performing a motor evaluation to test
Plaintiff's reflexes and coordination.  Dr. Edmonds
also examined Plaintiff's spine and extremities.  Dr.
Edmonds concluded that some of Plaintiff's neck pain
could be residual pain caused by a certain type of
whiplash injury that could have been sustained during
Plaintiff's car accident.  He further concluded that
Plaintiff had a preexisting neck condition that may
have been aggravated temporarily by the accident, but

that his condition probably returned close to where it was before the accident.

21.   In his review of Plaintiff's medical records following the accident, Dr. Edmonds did not find any limitation in Plaintiff's cervical range of motion. Further, in Dr. Edmonds' opinion, Plaintiff did not sustain any injury from the accident that would require future surgery.  Dr. Edmonds did not find that Plaintiff suffered a neck fracture or any permanent sensory, reflex, or motor loss.  He found that Plaintiff's complained of grip strength weakness was due to inconsistent effort, rather than indicating some sort of permanent disorder.

**C.   <u>Plaintiff's Employment History</u>**

22.   Plaintiff has been unemployed since 2007.

23.   Prior to 2007, he had been employed doing trailer mechanic work and earned approximately $400 a week.  There is no documentation of wages earned by Plaintiff for this time.

24.   At trial, Plaintiff did not provide any evidence as to whether he intends to resume employment or has applied for employment.  However, he believed that employment applications would ask whether he was in good health and believed that he could not answer such questions truthfully based on the alleged injuries he suffered from the accident.

///

///

## II.   CREDIBILITY DETERMINATIONS

25.   Having observed and considered the testimony presented by the Parties, the Court makes the following credibility determinations:

### A.   **Plaintiff**

26.   On balance, the Court finds that Plaintiff's testimony was not credible with respect to the extent of the physical injuries he suffered due to the accident.   At trial, Plaintiff intimated that he fractured his neck during the accident and contended that he continues to have severe neck pain because of the accident.   Although the Court acknowledges that Plaintiff may have experienced some neck discomfort immediately following the collision, his testimony regarding his neck pain was exaggerated and unsupported by any medical evidence.   Further, the Court observed that Plaintiff was mobile and moved his neck with ease. Therefore, the Court lends little weight to Plaintiff's testimony regarding his physical injuries.

### B.   **Plaintiff's Witness Robert Krider**

27.   At trial, Plaintiff called Robert Krider, who is an employee of the California Highway Patrol Multidisciplinary Accident Investigation Team.   Krider testified that he believed Ryan was the cause of the accident because Ryan made an unsafe lane change in violation of California Vehicle Section 21658(a). Krider came to this conclusion allegedly after reviewing photographs of Plaintiff's vehicle, which

Plaintiff provided, and analyzing the damage patterns on the vehicle; a traffic accident report that was prepared after the incident; and an interview with the original CHP officer who responded to the accident.

28.    It appeared that Plaintiff sought to offer Krider as an expert witness.  Federal Rule of Evidence 702 provides that a witness may be qualified as an expert "by knowledge, skill, experience, training, or education."  The testimony may only be admitted if it "is based upon sufficient facts or data" and "is the product of reliable principles and methods."  Id. Expert testimony must be both relevant and reliable, with a "basis in the knowledge and experience of [the relevant] discipline." Kumho Tire Co. v. Carmichael, 526 U.S. 137, 147 (1999) (citing Daubert v. Merrell Dow Pharm., 509 U.S. 579, 589 (1993)).  The methodologies on which expert testimony may be based are "not limited to what is generally accepted." Daubert v. Merrell Dow Pharm., 43 F.3d 1311, 1319 n. 11 (9th Cir. 1995). However, "nothing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the ipse dixit of the expert." Gen. Elec. Co. v. Joiner, 522 U.S. 136, 146 (1997).  The party proffering the evidence "must explain the expert's methodology and demonstrate in some objectively verifiable way that the expert has both chosen a reliable method and followed it faithfully." Daubert,

43 F.3d at 1319 n. 11.

29.   Plaintiff failed to lay the proper foundation as to Krider's qualifications.   Further, Krider did not adequately describe his methodology for determining who was responsible for the car accident.   Finally, many of the facts and data that Krider relied upon were not offered as evidence at trial.

30.   Because Plaintiff failed to satisfy the requirements of <u>Daubert</u> and Federal Rule of 702, the Court does not credit Krider's opinions.

**C.   <u>Defendant Michael Ryan</u>**

31.   The Court finds that Ryan's testimony was generally sincere and credible.   However, as further discussed below, the Court does not find entirely credible his testimony regarding whether the number three lane was clear when he moved into the lane.

**D.   <u>Defendant's Witness Monte Peckinpah</u>**

32.   Monte Peckinpah was a third-party witness of the accident.   The Court finds that Peckinpah was generally sincere and credible, though not necessarily accurate as to every single aspect of his testimony.

**E.   <u>Defendant's Expert Witness Dr. Harvey L. Edmonds</u>**

33.   The United States called Dr. Harvey L. Edmonds, M.D., to testify as to the independent medical evaluation he conducted on Plaintiff.   He performed a physical examination of Plaintiff, which included administering various motor and coordination tests, and reviewed Plaintiff's prior medical history and the

police report prepared after the accident.   Dr. Edmonds
concluded that, although Plaintiff may have suffered
some minor neck discomfort, Plaintiff would not require
future surgery or extensive medical treatment as a
result of the car accident.

34.   The Court finds Dr. Edmonds' testimony
generally credible because he spent time observing
Plaintiff and based his conclusion on tests that he
performed.   However, the Court recognizes that Dr.
Edmonds examined Plaintiff many years after the
accident.   The Court lends credence to Dr. Edmonds'
opinions, but does not rely entirely upon them in
assessing Plaintiff's past damages.

### III. CONCLUSIONS OF LAW

**A.   <u>Negligence</u>**

35.   The Federal Tort Claims Act ("FTCA") renders
the United States liable for "injury . . . caused by
the negligent or wrongful act or omission of any
employee of the Government while acting within the
scope of his office or employment, under circumstances
where the United States, if a private person, would be
liable to the claimant in accordance with the law of
the place where the act or omission occurred."   28
U.S.C. § 1346(b)(1); <u>Yanez v. United States</u>, 63 F.3d
870, 872 (9th Cir. 1995).   Under the FTCA, the
substantive law of the forum state, in this case
California, applies.   28 U.S.C. §§ 1346(b), 2674;
<u>Yanez</u>, 63 F.3d at 872; <u>Richards v. United States</u>, 369

U.S. 1, 9 (1962).

36.   In order to prevail on his negligence claim, Plaintiff must show that the United States had (1) a legal duty to use due care, (2) breached that duty, and (3) the breach was the proximate cause of Plaintiff's injury.  <u>Walker v. Sonora Regional Medical Center</u>, 202 Cal. App. 4th 948, 958 (2012).

37.   Under the doctrine of negligence per se, negligence is presumed if the plaintiff establishes four elements: (1) the defendant violated a statute, ordinance, or regulation of a public entity; (2) the violation proximately caused death or injury to person or property; (3) the death or injury resulted from an occurrence of the nature of which the statute, ordinance, or regulation was designed to prevent; and (4) the person suffering the death or the injury to his person or property was one of the class of persons for whose protection the statute, ordinance, or regulation was adopted.  <u>Galvez v. Frields</u>, 88 Cal.App.4th 1410, 1420 (2001); <u>Sanchez v. United States</u>, 803 F. Supp. 2d 1066, 1070 (C.D. Cal. 2011).

**1.   <u>Duty</u>**

38.   The existence of a duty is a question of law for the Court.  <u>Ann M. v. Pacific Plaza Shopping Center</u>, 6 Cal.4th 666, 674 (1993).  A driver must exercise the degree of care and caution that an ordinarily careful and prudent person, acting in same or similar circumstances, would exercise.  <u>Sills v.</u>

Forbes, 33 Cal.App.2d 219, 227 (1939).  "[A driver is] under a duty, both by statute and common law, to operate his vehicle without negligence so as to abstain from injuring any other person or his property." Bewley v. Riggs, 262 Cal.App.2d 188, 194 (1968).

39.  As the driver of the U.S. Forest Service vehicle, Ryan was under a duty operate his vehicle without negligence.

**2.  Breach of Duty**

40.  Under California Vehicle Code § 21658(a), a driver of a motor vehicle shall drive her vehicle "as nearly as practical entirely within a single lane" and no vehicle shall be "moved from the lane until such movement can be made with reasonable safety."  One who changes lanes must use reasonable care to ascertain that it can be done safely.  Nevarov v. Caldwell, 161 Cal.App.2d 762, 778 (1958).  "It is not necessary that he absolutely ascertain that the movement can be successfully executed, but it is obligatory upon him to use reasonable care to that end."  Id.

41.  Further, the operator of a vehicle must keep a proper lookout for other vehicles or persons on the highway and must keep his car under such control as will enable him to avoid a collision; failure to keep such a lookout constitutes negligence.  Downing v. Barrett Mobile Home Transp., Inc., 38 Cal. App. 3d 519, 524 (1974).

42.  Here, Ryan testified that before changing

13

lanes, he signaled using his right blinker, looked over his shoulder and checked his mirrors, and moved into the middle lane (the number two lane).  He repeated these steps before moving into the number three lane. According to Ryan, the lanes were clear when he made his lane changes.  In particular, Ryan testified that he did not see any vehicles in the number three lane as he changed lanes.

43.   The United States' contention is that Plaintiff drove too fast for the road conditions and rear ended Ryan's car.  To support this theory, the United States elicited testimony from Peckinpah, who stated that Plaintiff was driving too quickly and could have avoided the accident had he slowed down.

44.   However, the United States' theory is not fully credible.  The theory suggests that there was some gap in time between when Ryan changed lanes and when Plaintiff allegedly rear ended Ryan's vehicle. However, both sides testified that the accident occurred immediately after Ryan changed lanes. Further, Peckinpah suggested at trial that Ryan had not completed his lane change prior to the impact.  The testimony also shows that the Ford Expedition sustained damage in the right quarter panel.  There was no expert testimony regarding whether it was possible, based on the relative speed of the vehicles, that Plaintiff quickly closed in on Ryan's vehicle as Ryan changed lanes.  All of the testimony indicates that the number

three lane **was not clear** before Ryan made his lane change and that Ryan did not leave enough room between Plaintiff's and his car in order to complete the lane change safely.  Further, he should have seen Plaintiff's vehicle approaching quickly behind his vehicle.  If Ryan was carefully checking his blind spots and observing the number three lane, he would have seen Plaintiff traveling at a high rate of speed and avoided making the lane change.

45.   The Court finds that it was not reasonably safe for Ryan to change lanes, and that he violated California Vehicle Code § 21658(a).

46.   Under the totality of the circumstances, the Court finds that Ryan did not act reasonably, and breached his duty of care in the operation of his vehicle.

### 3.   Causation

47.   To establish causation, a plaintiff must provide evidence that "it is more probable that the event was caused by the defendant than it was not." Raven H. v. Gamette, 157 Cal.App.4th 1017, 1029-30 (2007); Jones v. United States, 933 F.Supp. 894, 900 (N.D. Cal. 1996).  Defendant is not liable unless its conduct was a proximate cause of Plaintiff's injury. PPG Indus., Inc. v. Transamerica Ins. Co., 20 Cal.4th 310, 315 (1999).

48.   Here, if Ryan had not breached his duty of care, it is probable that the accident would not have

occurred.   Thus, Plaintiff has proven that it is more probable than not that Plaintiff's injury occurred as a result of Ryan's failure to exercise due care in the operation of his vehicle.   Accordingly, Ryan acted negligently.

49.   Further, under the negligence per se standard, the Court finds that Ryan violated California Vehicle Section 21658(a) and his violation proximately caused Plaintiff's injury.   The Court finds that Section 21658(a) was designed to protect other drivers from death or injury, and Plaintiff falls into the class of persons for whose protection the statute was adopted. Therefore, the Court finds a presumption of negligence on the part of Ryan.

**B.   <u>Comparative Negligence</u>**

50.   California adopts a pure comparative negligence standard, meaning that the trier of fact reduces the amount of total damages awarded to the plaintiff by the proportion or percentage of negligence attributable to the plaintiff.   <u>Li v. Yellow Cab Co.</u>, 13 Cal.3d 804, 827, 829 (1975).

51.   In California, "No person shall drive a vehicle upon a highway at a speed greater than is reasonable or prudent having due regard for weather, visibility, the traffic on, and the surface and width of, the highway, and in no event at a speed which endangers the safety of persons or property."   Cal. Veh. Code § 22350.

1   52.   At trial, Ryan and Peckinpah testified that
2   traffic was slowing down because of an earlier
3   automobile accident on Highway 99, with vehicles
4   traveling at approximately 30-40 miles per hour.
5   Plaintiff was driving approximately 70 mph at the time
6   that traffic was slowing down.   Plaintiff testified
7   that he did not see Ryan's vehicle until the point of
8   impact and did not see traffic around him slowing down.
9   He did not indicate whether he attempted to reduce his
10  speed.   Both Ryan and Plaintiff testified that the
11  traffic conditions were clear and that no vehicles
12  obstructed their view.   Peckinpah testified that Ryan's
13  vehicle was colorfully marked and contained various
14  emergency lights, suggesting that Ryan's vehicle was
15  easily visible to other drivers.
16  53.   Plaintiff's admission that the only time he
17  saw Ryan's car was during the collision indicates to
18  the Court that Plaintiff was not paying proper
19  attention to other vehicles on the highway.   Peckinpah
20  testified that he was able to observe Ryan change lanes
21  toward the shoulder and that Ryan signaled his
22  intention to change lanes, suggesting that Plaintiff
23  should have seen Ryan changing lanes as well.   Had
24  Plaintiff been attentive to the traffic conditions, he
25  probably would have reduced his speed and possibly
26  could have avoided the collision.
27  54.   The Court also finds that Plaintiff was
28  driving too quickly for the traffic conditions.   As

noted, both Ryan and Peckinpah testified that vehicles were slowing down as a result of a prior accident on Highway 99.  Both Ryan and Peckinpah slowed down to approximately 40 miles per hour.  Based on these observations, the Court finds that Plaintiff also should have reduced his vehicle speed.  Had he reduced his driving speed, he could have seen Ryan's vehicle switching lanes and possibly could have avoided the collision.

55.  Given that there were at least two failures on the part of Plaintiff, the Court finds that Plaintiff was comparatively negligent in this case and his negligence was 75 percent responsible for his injuries, while Ryan's negligence was 25 percent responsible.

**C.   Damages**

56.  Because the Court concludes that Ryan was negligent, Plaintiff is entitled to damages.  However, as indicated below, many aspects of Plaintiff's request for damages is not supported by any evidence.

**1.   Special Damages**

57.  Under the FTCA, federal courts must use the applicable state law in the computation of non-punitive damages.  See 28 U.S.C. § 2674.  Under California law, the amount of damages a plaintiff may recover is "the amount which will compensate for all the detriment proximately caused thereby, whether it could have been anticipated or not."  Cal. Civ. Code § 3333.  Damages, however, must be reasonable.  Cal. Civ. Code § 3359.

"Although damages need not be proved to a mathematical
certainty, 'sufficient facts must be introduced so that
a court can arrive at an intelligent estimate without
speculation or conjecture.'" <u>Harmsen v. Smith</u>, 693
F.2d 932, 945 (9th Cir. 1982), cert. denied, 464 U.S.
822 (1983) (citing <u>Rochez Brothers v. Rhoades</u>, 527 F.2d
891, 895 (3d Cir. 1975)).

58.   The Parties agree that Plaintiff paid $100 for
his car and that his vehicle sustained significant
damage.   Other than providing information regarding how
much he paid for his vehicle, Plaintiff provided no
other evidence regarding its value.   Accordingly, the
Court concludes that Plaintiff is entitled to $100 for
the loss of his vehicle.

59.   The Court finds that Plaintiff presented no
evidence regarding his past medical expenses paid
stemming from this accident.   Therefore, the Court does
not award any damages for past medical expenses.

60.   Further, Plaintiff was not employed at the
time of the accident, so did not suffer any loss wages.

61.   Plaintiff also presented no evidence as to
damages for his loss of future earnings.   Damages for
the loss of future earnings in this context are
recoverable "'where the evidence makes reasonably
certain their occurrence and extent.'" <u>Kids' Universe
v. In2Labs</u>, 95 Cal.App.4th 870, 883 (2002).   The Court
does not award any damages for loss of future earnings.

62.   Plaintiff also presented no evidence of future

medical expenses.   To recover damages for future medical expenses, Plaintiff must show: (1) the reasonable value of each of the expected future medical charges; (2) that the future medical care, services or suppliers are reasonably certain to be needed and given in treatment of the injury; and (3) that the condition requiring the future medical care is casually connected to the injuries inflicted by the defendant.   <u>See</u> Cal. Civ. Code § 3283; <u>Hoffman v. Southern Pac. Co.</u>, 101 Cal.App. 218, 229–30 (1929).   In general, Plaintiff provided no medical evidence.   Plaintiff testified that he requires surgery for his neck in the amount of $100,000, which is completely unsupported by any medical evidence.   Further, the Court finds credible Dr. Edmonds' conclusion that Plaintiff does not require future surgery or medical treatment as a result of the accident.   Therefore, the Court does not award any damages for future medical expenses.

63.   In sum, the Court awards Plaintiff $100 in special damages.

**2.   <u>General Damages</u> - Pain and Suffering**

64.   California law entitles a negligently injured person to pain and suffering damages in order to compensate for any pain, discomfort, anxiety and other mental and emotional distress, as well as the loss of the capacity to enjoy life.   <u>See Capelouto v. Kaiser Found. Hosp.</u>, 7 Cal.3d 889, 892–93 (1972) (en banc). There is no definite standard or method of calculation

prescribed by law for determining compensation for pain and suffering under California law.  Loth v. Truck-A-Way Corp., 60 Cal. App. 4th 757, 764 (1998)(internal quotations omitted).  Rather, the trier of fact is required to determine the amount of damages that are just and reasonable in light of the evidence.  The detriment resulting from pain and suffering is difficult to translate into monetary loss, but it is a genuine one that must be compensated.  See Capelouto, 7 Cal.3d at 893.

65.  Plaintiff did not ask for any specific amount of general damages.  The Court recognizes that Plaintiff experienced a fairly significant automobile accident and has incurred damages attributable to the accident.  However, the Court does not find credible Plaintiff's claim of constant neck pain, allegedly stemming from the accident, given the paucity of medical evidence presented at trial and that Plaintiff appeared mobile and showed no outward expressions of pain.  Further, Plaintiff did not provide any evidence regarding how the accident affected his enjoyment of life.  Accordingly, the Court awards Plaintiff $500 in general damages for past pain and suffering.

66.  In total, the Court awards Plaintiff $600.  As the Court finds Plaintiff 75 percent negligent, the Court reduces the award to $150.

///

///

21

### III. CONCLUSION

For the foregoing reasons, the Court finds, by a preponderance of the evidence, that the United States of America is liable for 25 percent of the damages resulting from Plaintiff's injuries.  The Court hereby awards judgment on the merits in favor of Plaintiff in the amount of $150.

**IT IS SO ORDERED.**

DATED: April 8, 2013

RONALD S.W. LEW
_____
**HONORABLE RONALD S.W. LEW**
Senior, U.S. District Court Judge